# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1032V
Filed: May 5, 2022
UNPUBLISHED

| | |
|---|---|
| EVONNE CALLAGHAN on behalf of K.B., <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Special Master Horner <br><br> Attorney's Fees and Costs; Reasonable Rates; Expert Rates |

*Anthony James Bucher*, Gatlin Voelker, PLLC, Covington, KY, for petitioner.
*Lara A. Englund*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On July 17, 2019, petitioner filed a claim under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), on behalf of her minor daughter, K.B. (ECF No. 1.) Petitioner alleged that K.B. suffered postural orthostatic tachycardia syndrome ("POTS") and neuropathic pain symptoms as the result of her June 28, 2018, Human Papilloma Virus ("HPV") and/or Hepatitis A vaccinations. (ECF No. 1.) After an initial round of expert reports, petitioner moved for dismissal and her case was dismissed on August 4, 2021. (ECF No. 38.)

Petitioner subsequently moved for an award of attorneys' fees and costs on August 19, 2021. (ECF No. 41.) Petitioner requests $111,895.36, representing $17,962.69 in attorneys' fees and $93,932.67 in costs. (*Id*. at 1.) Petitioner also submitted an affidavit indicating she has personally incurred expenses of $1,700.00 in

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

proceeding on the petition.  (ECF No. 41-8.)  In response, respondent indicated that he is satisfied that the statutory requirements for an award of attorneys' fees and costs have been met, but otherwise deferred to the special master regarding the amount of an appropriate award.  (ECF No. 43.)  No reply was filed.  For the reasons discussed below, I award petitioner attorneys' fees and costs in the reduced amount of $66,583.67.

## I. Legal Standard for Determining Reasonable Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs."  § 300aa–15(e)(1)(A)–(B).  The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  *See, e.g. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs."  *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).  Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Avera*, 515 F.3d at 1347–48 *(*quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings.  *Id*.

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award.  *Wasson,* 24 Cl. Ct. at 484.  Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique."  *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable.").  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges."  *Duncan,* 2008 WL 4743493.

## II. Analysis

### a. Petitioner's Counsel's Hourly Rate

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (citation and quotation omitted). In *Avera*, the Federal Circuit found that in Vaccine Act cases, the special master should use the rate prevailing in the forum, *i.e.*, Washington, D.C., in determining an award of attorneys' fees unless the bulk of the work is completed outside of the forum and there is a "very significant difference" between the forum hourly rate and the local hourly rate. 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F.3d 755 (D.C. Cir. 1999)).

For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.[2] No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and 2017 through 2022 can be accessed online.[3] Special masters have previously confirmed that attorneys in Covington, Kentucky, (part of the Cincinnati-area legal market) are entitled to forum rates based on analysis of a local rate index known as the "Rubin Committee" rates. *Jones v. Sec'y of Health & Human Servs.*, No. 09-293V, 2016 WL 7233938 (Fed. Cl. Spec. Mstr. Nov. 18, 2016); *Windhorst v. Sec'y of Health & Human Servs.*, 2017 WL 4768125 (Fed. Cl. Spec. Mstr. Sept. 27, 2017). Here, Mr. Bucher presents his existing Rubin Committee rates adjusted downward by 18.3% to eliminate any risk premium as originally identified by the McCulloch decision. (ECF No. 41, p. 8 (citing *McCulloch*, 2015 WL 5634342, at 17-19).) Upon my review, this adjustment aligns Mr. Bucher's hourly rate with the appropriate rates as reflected on the Attorneys' Forum Hourly Rate Fee Schedules.[4] I find these hourly rates to be reasonable.

### b. Petitioner's Counsel's Hours Expended

Special masters may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson*, 24 Cl. Ct. at 484.

---

[2] After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, the special master concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large. *McCulloch,* 2015 WL 5634323, at *17.

[3] Each of the Fee Schedules for 2015 through 2022 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017 through 2022 are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

[4] Actually, what Mr. Bucher did was bill at his normal Rubin Committee rates and reduce the total bill by 18.3%. Applying the reduction to the rate itself, Mr. Bucher effectively seeks a rate of approximately $380 per hour for work performed in 2018 (where the range for the appropriate tier is $324-$405), $395 per hour for work performed in 2019 (where the range for the appropriate tier is $338-$422), and $411 per hour for work performed in 2021 (where the appropriate range is $355-$444). (ECF No. 41, p. 7.)

3

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  See *Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

Based on my review of the billing records, they appear reasonable on the whole. Especially in light of the overall amount involved, no reductions appear necessary.

### c. Expert Costs

Attorneys' costs must be reasonable as well.  See *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").  An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable.  *Ceballos v. Sec'y of Health & Human Servs.*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).  Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).

Many Vaccine Program cases provide a framework for determining the appropriate rate for experts in this program at rates up to $500 an hour.  See *O'Neill v. Sec'y of Health & Human Servs.,* No. 08–243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *8 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, his rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796, at *2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (approving a rate of $500 per hour for an expert in neurology and immunology and who also had expertise in a pertinent area to the issue in the case); *Chen Bou v. Sec'y of Health & Human Servs.,* No. 04-1329V, 2007 WL 924495, at *10, *16 (Fed. Cl. Spec. Mstr. Mar. 9, 2007) (awarding an expert a rate of $350 per hour based in part on his poor performance in testifying at hearing but noting that "[b]ased upon the information submitted [ ], with the appropriate set of facts the undersigned would have no issue with awarding the $500 requested by petitioner")).

This is not an absolute ceiling.  Some more recent cases have accepted increasing expert rates owing at least in part to the fact that expert rates in the program have been relatively stable for a number of years.  *Williams v. Sec'y of Health & Human Servs.*, No. 17-255V, 2022 WL 628716, at *4-5 (Fed. Cl. Spec. Mstr. Feb. 7, 2022) (allowing $600 per hour as a reasonable rate for a hepatologist and noting prior decisions awarding lower amounts "were issued about five years ago, suggesting the relevant rates could be different today.")  However, the burden is on petitioner to justify her requested expert rate.  *Simon v. Sec'y of Health and Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008) (stating that "[t]he burden is on the petitioner to demonstrate the reasonableness of the expert's requested hourly rate.").

In reality, it is rare for a special master to award an expert rate exceeding $500 per hour.  *See Green v. Sec'y of Health and Human Servs.*, No. 15-1447V, 2017 WL 6336776, at *4 (Fed. Cl. Spec. Mstr. Nov. 16, 2017) (noting that, "[e]ven in consideration of [numerous] ... factors [used to determine a reasonable hourly rate], special masters have declined to award more than $500 an hour to expert witnesses in the Vaccine Program."); *Cruz ex rel. L.J.L. v. Sec'y of Health and Humans Servs.*, No. 14-1119V, 2020 WL 1816094, at *6 (Fed. Cl. Spec. Mstr. Mar. 20, 2020) (noting in a May 4, 2018 order that "[t]o date, special masters have not awarded more than $500 [per] hour to highly qualified specialists in such fields as neurology, neuro-immunology, pediatrics, immunology, pathology, and rheumatology. This maximum rate is generally reserved for experts who are exceptionally well-qualified, have developed experience in the Vaccine Program, and who have provided thorough and detailed analyses.").  Factors to consider in setting an expert hourly rate include the expert's prior experience in the program, efficiency, effectiveness, and particular expertise.  *See e.g., Smith v. Sec'y of Health & Human Servs.,* No. 18-43V, 2020 WL 1243238, at *9 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) ("Rather, the reasonableness of any given expert's hourly rate will be based on individual factors such as credentials, particular expertise, efficiency, and effectiveness."); *Lewis v. Sec'y of Health & Human Servs.*, 149 Fed. Cl. 308, 321 (2020) ("With respect to an expert's rate, the inquiry is whether the rate is that prevailing in the community for similar services by experts of reasonably comparable skill, experience, and reputation.") (citing *Frantz v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 137, 145 (2019)).

Petitioner's sole expert in this case was Dr. Michael Henrickson.  Dr. Henrickson billed 117.3 hours at a rate of $750 per hour to produce one report in this case.  (ECF No. 41-9, p. 4.)  He billed a further 4.67 hours at the same rate to assemble his reference material.  (*Id.* at p. 5.)  He billed a further 1.83 hours at the same rate to review the government's expert's reports.  (*Id.* at 6.)  In sum, Dr. Henrickson billed 123.8 hours totaling $92,910.00.  In her motion, petitioner requests full reimbursement of Dr. Henrickson's invoice and asserts that all of the incurred costs were reasonable; however, petitioner does not offer any specific argument to support the contention that either Dr. Henrickson's hourly rate or the hours expended were reasonable.  (ECF No. 41.)

Dr. Henrickson is a board-certified pediatric rheumatologist in practice since the mid-1980's.  (Ex. 23, pp. 1-2.)  His curriculum vitae does not reveal any special training or research interest in postural orthostatic tachycardia syndrome ("POTS"), neuropathic pain, or dysautonomia generally; however, he did have a prior medical consultation with K.B.  (Exs. 23, 19, p. 1.)  Review of prior caselaw does not reveal any instance in which Dr. Henrickson previously participated as an expert in this program.  Nothing in the record of this case suggests that Dr. Henrickson has prior experience as an expert witness outside of this program or that he has any established track record of being compensated for expert consultation at his requested hourly rate.  Additionally, given the hours billed, it does not appear that Dr. Henrickson was particularly efficient.  Rheumatologists in particular have been compensated between $400-$500 per hour for their work in this program as recently as the last two years.  *Apuzzo v. Sec'y of Health & Human Servs.,* No. 17-1915V, 2021 WL 4305223, at *3 (Fed. Cl. Spec. Mstr. Aug. 23, 2021); *Stricker v. Sec'y of Health & Human Servs.,* No. 18-56V, 2020 WL 1028901, at *4 (Fed. Cl. Spec. Mstr. Feb. 6, 2020).  In consideration of the record of this case and the factors discussed above, I conclude that $400 per hour is a reasonable hourly rate for Dr. Henrickson.

Regarding the hours billed, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  "One test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation would be willing to pay for such expenditure."  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530, at *1 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008)).  The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  *Saxton*, 3 F.3d at 1521.  Additionally, counsel have an obligation to monitor expert fees and costs.  *Simon*, 2008 WL 623833, at *2.

Although the 117.3 hours included in Dr. Henrickson's initial invoice appears very high for a single report, it is notable that the report in question was long and comprehensive, the report itself totaling 56 pages of medical commentary (albeit double spaced).  Additionally, Dr. Henrickson accompanied his report with a separate 22-page summary of petitioner's medical history and a further 20-page document including graphs, charts, and figures that helped to illustrate specific points within his report.  Many of these demonstratives were produced by Dr. Henrickson himself rather than merely being copied from other sources and they were helpful in understanding his

medical opinion.  In sum, the total billing comes out to a little over an hour per page produced, which does not seem to be unreasonable.  Moreover, none of Dr. Henrickson's specific billing entries appears facially problematic.  To the extent a more experienced expert might have achieved the same result in a shorter period, or may have produced an equally effective but more streamlined report, I have already accounted for that in setting Dr. Henrickson's hourly rate.

However, Dr. Henrickson also subsequently issued a second invoice billing an additional 4.67 hours for an after-the-fact compilation of the medical literature supporting his opinion.  (ECF No. 41-9, p. 5.)  Because Dr. Henrickson's previous bill encompassed his medical research, I do not see justification for this additional billing as it would have been far more reasonable for Dr. Henrickson to bookmark, download, copy, or otherwise retain the relevant articles as he was conducting his research.  And, in any event, it is not readily apparent that the mere retrieval and compilation of this previously identified literature required the services of an expert billing at his full hourly rate.  Accordingly, I will not award reimbursement of Dr. Henrickson's second invoice reflecting 4.67 hours of work.

In total, I award petitioner reimbursement for Dr. Henrickson's work in the amount of $47,652.00 (119.13 hours at $400 per hour).

### d. Additional Costs

Apart from the costs associated with securing Dr. Henrickson's opinion, petitioner's counsel seeks reimbursement of the following:  $400 for the petition filing fee, $83 for travel mileage, $22.29 (total) in postage, $85.63 (total) to obtain medical records, and $431.75 for in-house photocopying.  (ECF No. 41-1, p. 6.)  With regard to medical records, only a single charge from the Cleveland clinic has been documented.  (*Compare* ECF No. 41-1, *and* ECF No. 41-9.)  Thus, I will not reimburse the $53.69 in undocumented medical record costs.  Accordingly, $968.98 in additional expenses beyond those associated with the expert report will be reimbursed.

Additionally, petitioner has filed an affidavit indicating that she "paid $1,700.00 to my attorney toward the payment of expenses in conjunction with the pursuit of the vaccine injury claims."  (ECF No. 41-8.)  No further explanation or documentation was provided.[5]  Thus, based on the existing record, I cannot conclude that the money petitioner paid to her counsel represented payment of any *additional* expenses.  No separate invoice has been filed to support petitioner's statement or to indicate whether or how petitioner's funds were expended by counsel.  Nor have any separate billing records been provided showing client funds were used to pay such expense.  Counsel's billing invoice documenting costs associated with this case does not otherwise provide clarification.  (ECF No. 41-1.)  Because the affidavit was filed by counsel, I accept it as an agreed upon fact between petitioner and her counsel.  However, without additional

---

[5] I provided petitioner an opportunity to provide additional documentation.  (*See* Scheduling Order (Non-PDF), 4/22/2022).)  However, no action was taken.

documentation, if the money petitioner paid to counsel is to be reimbursed, then it must be deducted from the costs payable to counsel. Thus, costs in this case will be reimbursed and distributed as follows: $46,920.98 payable to petitioner and petitioner's counsel jointly ($47,652.00 + $968.98 - $1,700.00) and $1,700.00 payable solely to petitioner.

### III.    Conclusion

In light of the above, petitioner's application for attorneys' fees and costs is **GRANTED** with reductions and **petitioner is awarded $66,583.67 as follows:**

- **a lump sum in the amount of $64,883.67, representing reimbursement for $17,962.69 in attorneys' fees and $46,920.98 in attorneys' costs, in the form of a check made payable to petitioner and her counsel, Anthony James Bucher, Esq.; and**

- **a lump sum in the amount of $1,700.00, representing reimbursement of personal costs, in the form of a check made payable to petitioner.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

s/Daniel T. Horner
Daniel T. Horner
Special Master

---

[6] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).